IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AARON L. BELL | : | |
| *Plaintiff,* | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DAVID O'CONNOR et al., | : | No. 12-2625 |
| *Defendants.* | : | |

MEMORANDUM

PRATTER, J.                                                                                    NOVEMBER 20, 2014

In this suit under 42 U.S.C. § 1983, Aaron L. Bell alleged that the City of Philadelphia (the "City") and Police Officers David O'Connor and Colin Goshert (the "Officers") violated his Fourth Amendment rights through an illegal stop (Count I), a false arrest (Count II), an illegal search (Count III), malicious prosecution (Count IV), and the City's adoption of a policy or custom of permitting Fourth Amendment violations (Count V). After lengthy pretrial proceedings and issue narrowing, the case proceeded to trial. Mr. Bell, a layperson, represented himself. At trial, the jury found for Mr. Bell on Counts II, III, and V, and awarded Mr. Bell $100,000.00 in compensatory damages from all the Defendants (i.e., jointly and severally) and $1,000.00 in punitive damages from the Officers. The jury rendered defense verdicts on Counts I and IV.

Both parties filed post-verdict motions. Pursuant to Federal Rules of Civil Procedure 50 and 59, the parties ask the Court to disturb portions of the jury verdict. Mr. Bell requests a new trial on Counts I and IV; the Defendants accept the verdict on Count III but request judgment as a matter of law or a new trial on Counts II and V, and either a new trial on damages or a

1

modification of the damages award. Mr. Bell also filed a Motion for Sanctions under Rule 11 and a Motion for Costs. For the reasons that follow, the Court will grant judgment as a matter of law for the City on Count V, but otherwise leave the jury's verdict untouched. The Court will also grant Mr. Bell's Motion for Costs and deny his Motion for Sanctions.

**I.  Facts**

The Third Amended Complaint (the "Complaint") (Docket No. 51) alleges that Officers O'Connor and Goshert illegally stopped, searched, arrested, and prosecuted Mr. Bell in violation of the Fourth Amendment of the United States Constitution. The Complaint also alleges that the City adopted a policy or custom of permitting Fourth Amendment violations, and that the City's policy or custom caused the Officers to violate Mr. Bell's Fourth Amendment rights.

A jury trial was held on May 27-29, 2014. Defendants' oral motion for judgment as a matter of law at trial was denied, and the jury ultimately returned a split verdict: the jury found for Mr. Bell on the claims of illegal search (Count II), false arrest (Count III), and municipal liability (Count V), but found for the Defendants on the claims of illegal stop (Count I) and malicious prosecution (Count IV). The jury awarded Mr. Bell $100,000.00 to "fairly compensate Mr. Bell for any injury he actually sustained as a result of any or all of the Defendants' conduct." (Verdict Form at Part III(1)). The jury also awarded punitive damages—$500.00 from each of the Officers—for acting "maliciously or wantonly in violating Mr. Bell's rights." (*Id.* at Part III(2)).

After the jury returned its verdict, Mr. Bell filed a Motion for Costs (Docket No. 85). Defendants filed a Motion for Judgment as a Matter of Law, or in the Alternative, for a New Trial or to Alter or Amend the Judgment (Docket Nos. 81, 99) and Mr. Bell filed a Motion for a

2

New Trial (Docket No. 91). After the parties filed this initial round of post-verdict motions, Mr. Bell filed a Motion for Sanctions (Docket No. 102). Extensive briefing ensued once the trial transcript was prepared. The Court held oral argument on the pending motions on November 7, 2014.[1]

## II.    Standard of Review[2]

The standard of review for a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50 is "whether, viewing the evidence in the light most favorable to the non-movant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Eddy v. V.I. Water & Power Auth.*, 369 F.3d 227, 230 (3d Cir. 2004). "In determining whether the evidence is sufficient to sustain liability, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993). The Court may only enter judgment as a matter of law following return of a verdict by a jury "only if, as a matter of law, the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief." *Trabal v. Wells Fargo Armored Serv. Corp.*, 269 F.3d 243, 249 (3d Cir. 2001). That the jury's verdict is to be afforded every consideration is clear.

Under Federal Rule of Civil Procedure 59, the Court may grant a motion for a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal

---

[1] Oral argument was originally scheduled for October 17, 2014, but was unavoidably rescheduled at the last minute, a change for which the Court again apologizes to the parties and counsel.

[2] This Part II articulates the standards of review for those motions that seek to disturb the jury verdict. The standards of review for Mr. Bell's Motion for Sanctions and Motion for Costs are discussed in the Court's analysis of those particular motions. *See infra* Part III.D-E.

3

court." Fed. R. Civ. P. 59(a)(1)(A). A motion for a new trial may be "bottomed on the claim that the verdict is against the weight of the evidence . . . or that, for other reasons, the trial was not fair to the party moving; and [it] may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940). In deciding a motion under Rule 59, the Court undertakes a two-step inquiry. First, the Court determines whether there was error. Second, the Court looks to Rule 61 of the Federal Rules of Civil Procedure and decides whether any error was so prejudicial as to be "inconsistent with substantial justice." Fed. R. Civ. P. 61; *see Goodman v. Pa. Turnpike Comm'n*, 293 F.3d 655, 675-76 (3d Cir. 2002). "Where the subject matter of the litigation is simple and within a layman's understanding, the district court is given less freedom to scrutinize the jury's verdict than in a case that deals with complex factual determinations . . . ." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1352 (3d Cir. 1991).

On the issue of damages, a new trial is warranted only where the verdict is grossly excessive and bears no rational connection to the evidence. *See Gumbs v. Pueblo Int'l, Inc.*, 823 F.2d 768, 773 (3d Cir. 1987). The Court should not order a new trial or remittitur unless "a miscarriage of justice would result if the verdict were to stand." *Delli Santi v. CNA Ins. Cos.*, 88 F.3d 192, 201 (3d Cir. 1996). In other words, the verdict should remain undisturbed unless it "cries out to be overturned or shocks the conscience." *Williamson*, 926 F.2d at 1353. Although the Court is "alert to its responsibility to see that jury awards do not extend beyond all reasonable bounds," *Walters v. Mintec/Int'l*, 758 F.2d 73, 82 (3d Cir. 1985), the Court's "obligation is to uphold the jury's award, if there exists a reasonable basis to do so . . . . [A] court *may not* vacate

or reduce the award merely because it would have granted a lesser amount of damages." *Motter v. Everest & Jennings, Inc.*, 883 F.2d 1223, 1230 (3d Cir. 1989) (emphasis in original).

In considering all the post-verdict motions, the Court is mindful that

> [t]he jury were the judges of the credibility of the witnesses . . . and in weighing their testimony had the right to determine how much dependence was to be placed upon it. There are many things sometimes in the conduct of a witness upon the stand, and sometimes in the mode in which his answers are drawn from him through the questioning of counsel, by which a jury are to be guided in determining the weight and credibility of his testimony. That part of every case . . . belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men; and so long as we have jury trials, they should not be disturbed in their possession of it, except in a case of manifest and extreme abuse of their function.

*Aetna Life Ins. Co. v. Ward*, 140 U.S. 76, 88 (1891); *see Williamson*, 926 F.2d at 1352 ("When the district court grants a motion for a new trial based on the weight of the evidence, the court . . . effects a denigration of the jury system and to the extent that new trials are granted the judge takes over, if he does not usurp, the prime function of the jury as the trier of facts.").

### III. Discussion

#### A. Defendants' Motion for Judgment as a Matter of Law on Counts II and V

##### 1. *Count II: False Arrest under the Fourth Amendment*

Defendants move for judgment as a matter of law or a new trial on Count II, arguing that probable cause to arrest Mr. Bell existed as a matter of law. Defendants point to three undisputed facts in support of their argument: (1) Mr. Bell was a convicted felon; (2) Mr. Bell was the lone occupant of a vehicle in which a firearm was found; and (3) Mr. Bell had no license to carry a firearm. (*See* Def.'s Mem. at 3-5). According to Defendants, these facts establish that "Officers Goshert and O'Connor had probable cause to believe Aaron Bell was violating [18 Pa. Cons.

Stat.] § 6105," which makes it "unlawful for a person convicted of a felony to possess, use, control, sell, or transfer a firearm in Pennsylvania." *Id.* at 4-5.

"Probable cause to arrest exists when the facts and circumstances *within the arresting officer's knowledge* are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000) (emphasis added). "It is the function of the court to determine whether the objective facts available to the officers at the time of arrest were sufficient to justify a reasonable belief that an offense was being committed." *United States v. Glasser*, 750 F.2d 1197, 1206 (3d Cir. 1984). If the arresting officers were unaware of sufficient facts to create a reasonable belief that the person to be arrested had committed or was committing an offense, then there was no probable cause to arrest. *See Rogers v. Powell*, 120 F.3d 446, 453 (3d Cir. 1997). The existence of probable cause in a suit under § 1983 is typically a question of fact. *See Wilson v. Russo*, 212 F.3d 781, 796 (3d Cir. 2000). Nevertheless, the court may conclude that probable cause existed as a matter of law "if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding." *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997).

Here, due to testimony about *when* Mr. Bell was arrested, there are sufficient facts in the record to support the jury's finding of liability for false arrest. At trial, Mr. Bell testified that he was arrested immediately after the Officers discovered the gun, but before the Officers conducted any background checks to determine if he was a convicted felon or licensed to carry a firearm. *See* Trial Tr. 73:17-74:22, May 28, 2014 ("As soon as Defendant Goshert said he discovered a firearm, [Officer] O'Connor placed the handcuffs on me immediately. He told me

6

that I was placed under arrest. It was very clear to me."). Additionally, the record shows that Officer O'Connor testified in the underlying criminal case against Mr. Bell that he arrested Mr. Bell for a violation of the Uniform Firearms Act (a "VUFA") before the Officers checked to see whether Mr. Bell was licensed to carry a firearm. *See* Trial Tr. 56:9-22, vol. 2, May 27, 2014. Defendants dispute Mr. Bell's version of events,[3] but there remains sufficient evidence in the record for a reasonable jury to determine that the Officers lacked probable cause to believe Mr. Bell committed a VUFA when they arrested him. Although Officer O'Connor testified in this

---

[3] At oral argument, Defendants argued that the Officers handcuffed Mr. Bell as part of a seizure that did not rise to the level of a formal arrest requiring probable cause, and that the Officers formally arrested Mr. Bell only after they discovered the facts underlying the VUFA. For several reasons, the Court is not persuaded. First, Defendants waived this argument because they did not advance this theory at trial or in their written submissions to the Court. Second, even assuming that Defendants had timely raised the argument, the Court finds it unpersuasive because the jury could have believed, and apparently did believe, Mr. Bell's version of events. If, as Mr. Bell testified, the Officers handcuffed him and told him he was under arrest, they arrested him for purposes of the Fourth Amendment and the arrest was illegal absent probable cause. *See Kaup v. Texas*, 538 U.S. 626, 629 (2003) ("A seizure of the person within the meaning of the Fourth and Fourteenth Amendment occurs when, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." (internal quotation marks omitted)); *California v. Hodari D.*, 499 U.S. 621, 626 (1991) ("[A]n assertion of authority and purpose to arrest followed by submission of the arrestee constitutes an arrest.") *Brown v. Illinois*, 422 U.S. 590, 594 (1975) (disapproving of an arrest made for "investigatory" purposes on less than probable cause when the arrestee was handcuffed and told he was under arrest); *Michigan v. Summers*, 452 U.S. 692, 696 (1981) (distinguishing between a pre-arrest seizure and a formal arrest that must be supported by probable cause); *Dunaway v. New York*, 442 U.S. 200, 212 (1979) (explaining that a detention in many respects indistinguishable from a traditional arrest must be supported by probable cause); *but see Hodari D.*, 499 U.S. at 626 (reading the "reasonable person" test as establishing a necessary, but not a sufficient, condition for seizure).

Defendants' argument that *police officers* cannot be expected to appreciate the difference between an arrest requiring probable cause and a temporary seizure requiring less than probable is difficult to take seriously. This conduct is after all, a fundamental part of a police officer's job. *See, e.g.*, *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action."). It is certainly not grounds for finding that the Officers complied with the Fourth Amendment as a matter of law or for setting aside the jury's verdict.

case that he checked whether Mr. Bell was a convicted felon or licensed to carry a firearm before making the arrest, *see* Trial Tr. 63:3-17, 107:25-108:17, vol. 2, May 27, 2014, a reasonable jury could have rejected his version of events and instead found Mr. Bell's testimony more credible. If the jury believed that the Officers were unaware of a factual basis for Mr. Bell's arrest at the time of his arrest, then it would be reasonable to conclude that the Officers arrested Mr. Bell without probable cause in violation of the Fourth Amendment. The Court will deny Defendants' request for judgment as a matter of law or, in the alternative, a new trial on Count II.

### 2. *Count V: Municipal Liability*

Mr. Bell presents two alternative theories of municipal liability. First, he argues that the City was deliberately indifferent to a prior pattern of similar Fourth Amendment violations committed by Officer O'Connor. Second, he argues that Lieutenant Peter Sandusky, a policymaker for purposes of this case, *see* Trial Tr. 9:7-11, May 29, 2014, adopted the Officers' Fourth Amendment violation as a City custom by covering up the incident. The City argues that Mr. Bell presented legally insufficient evidence to establish municipal liability for the violation of his Fourth Amendment rights under either theory.

Municipalities like the City may be sued under § 1983 for constitutional rights violations. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-92 (1978). To succeed on a claim against the City under § 1983, Mr. Bell had to establish that (1) the City had a policy or custom that deprived him of his constitutional rights; (2) the City acted deliberately and was the moving force behind the deprivation; and (3) his injury was caused by the identified policy or custom. *See Stewart v. Moll*, 717 F. Supp. 2d 454, 464-65 (E.D. Pa. 2010). The City cannot be liable under § 1983 solely on a respondeat superior theory. *See Monell*, 436 U.S. at 692. Instead,

Mr. Bell must show that the City, through one of its policymakers, affirmatively adopted the policy or acquiesced in the widespread custom that caused the violation. *See Watson v. Abington Twp.*, 478 F.3d 144, 155-56 (3d Cir. 2007). The City may be liable "for a single decision by municipal policymakers under appropriate circumstances," such as when an official's "acts or edicts may fairly be said to represent official policy." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). The existence of an unlawful policy or custom is not enough to maintain Mr. Bell's § 1983 action against the City. Rather, Mr. Bell must prove that the City's practice proximately caused the injuries he suffered. *See Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984). Proof of proximate causation requires that there be "an affirmative link between the policy and the particular constitutional violation alleged." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).

In this case, Mr. Bell argues that the City failed to train or discipline Officer O'Connor after learning that he committed several Fourth Amendment violations. "[A] failure to train, discipline, or control can only form the basis for section 1983 municipal liability if the plaintiff can show both [(a)] contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and [(b)] circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." *Montgomery v. De Simone*, 159 F.3d 120, 127 (3d Cir. 1998). In essence, Mr. Bell must "establish a municipal custom coupled with causation—i.e., that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to [his] injury." *Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990). Mr. Bell argues that the City was deliberately indifferent to a prior pattern of

9

Fourth Amendment violations by Officer O'Connor and that the Officers violated Mr. Bell's Fourth Amendment rights because they knew they would not be punished. Alternatively, Mr. Bell argues that the City is liable because Lt. Sandusky covered up the violation of Mr. Bell's Fourth Amendment rights.

The Court finds that there is decidedly insufficient evidence in the record to support municipal liability. To demonstrate that the City knew of a prior pattern of Fourth Amendment violations by Officer O'Connor, Mr. Bell relies on the fact that the City knew of at least one lawsuit and seven complaints against Officer O'Connor alleging illegal searches between 2009 and 2013. *See* Trial Tr. 5:15-6:17, May 28, 2014 (stipulation to the existence of prior complaints); Trial Tr. 52:1-7, May 28, 2014. A reasonable jury may rely on a series of complaints of constitutional violations, both predating and postdating the constitutional violation alleged in a given case, to infer that an officer's supervisors knew or should have known of some bad behavior. *See Beck v. City of Pittsburgh*, 89 F.3d 966, 973 (3d Cir. 1996). However, there is no evidence in this record from which the jury could conclude that Officer O'Connor *actually* committed any of the alleged Fourth Amendment violations. In this case, such absent evidence would have been essential for a reasonable jury to conclude that the City was deliberately indifferent toward actual misconduct in violation of the Fourth Amendment. *See Walker v. City of New York*, 974 F.2d 293, 300 (3d Cir. 1992). Even in *Beck*, in which the existence of complaints against police officers helped establish municipal liability, the plaintiffs presented evidence beyond the complaints to prove that constitutional violations had actually occurred. *See Beck*, 89 F.3d at 975. Although "it is logical to assume that continued official tolerance of repeated misconduct facilitates similar unlawful actions in the future," *Bielevicz*, 915 F.2d at

10

851, there is insufficient evidence in the record from which a reasonable jury could find that prior Fourth Amendment violations had been committed.

With respect to Lt. Sandusky's alleged cover up of the Officers' Fourth Amendment violation, Mr. Bell failed to present sufficient evidence of causation. Because Lt. Sandusky's alleged cover up and abuse of "arrest memos"[4] occurred *after* the alleged Fourth Amendment violation, there is no evidence in the record from which a reasonable jury could conclude that the Officers committed the Fourth Amendment violation *because* of the alleged cover up. Mr. Bell tries to prove causation by relying on the series of complaints against Officer O'Connor and arguing that similar cover ups occurred in connection with those complaints, so the City's refusal to punish Fourth Amendment violations encouraged the Officers to commit additional violations. However, as noted above, the record is insufficient for a reasonable jury to conclude that any prior Fourth Amendment violations had actually occurred. Likewise, the record is insufficient for a reasonable jury to have found that the City actually covered up any prior violations.

Mr. Bell could have presented many different types of evidence to support his theories of municipal liability. For example, he could have introduced direct evidence that Officer O'Connor actually committed a series of Fourth Amendment violations or that the City used the same flawed process to investigate the prior complaints against Officer O'Connor. However, the existing record is "critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief," *Trabal*, 269 F.3d at 249, so the Court will enter judgment as a matter of law on Count V in favor of the City.

---

[4] At trial, Mr. Bell argued that the Philadelphia Police Department used false reports called "arrest memos" to cover up Fourth Amendment violations. *See* Trial Tr. 26:15-23, May 29, 2014.

B.      Defendants' Motion for a New Trial or to Alter or Amend the Judgment

The jury awarded Mr. Bell $100,000.00 in compensatory damages and $1,000.00 in punitive damages. Defendants argue that there is insufficient evidence in the record for a reasonable jury could have awarded so much money. In particular, Defendants argue that the damage award is based on the jury's improper consideration of Mr. Bell's lengthy incarceration rather than its consideration of the appropriate damages for false arrest, consisting of "damages only for the time of detention until the issuance of process or arraignment, and not more." *Montgomery*, 159 F.3d at 126. Mr. Bell testified that he was imprisoned for 431 days, *see* Trial Tr., 78:4-5, May 28, 2014, and Defendants assume that the jury awarded him $100,000.00 to compensate for that term of imprisonment. As a result, Defendants conclude that the award is the product of "passion and prejudice" and request that the Court either order a new trial on the issue of damages or reduce the verdict on its own. (*See* Def.'s Mem. at 7).

The decision whether to grant a motion for a new trial rests in the sound discretion of the court. *See Maylie v. Nat'l R.R. Passenger Corp.*, 791 F. Supp. 477, 480 (E.D. Pa. 1992). "[T]he court should not set aside a verdict and order a new trial merely because, had the trial been a bench trial, it would have awarded a sum different from the sum the jury determined to be appropriate. Although the court should not approve clear miscarriages of justice, the court must give due respect to the jury's traditional and valued role as finder of fact and must recognize that, even if granting the motion would result in the trying of the case before a new jury, to a certain extent granting a motion for a new trial represents a substitution by the court of its own judgment for that of the jury." *Id.* at 480-81.

12

The Court will deny Defendants' request for a new trial on the issue of damages for several reasons. First, the verdict sheet did not require the jury to specify which portion of the damages was attributable to which Count or cause of action or Defendant(s), so Defendants' assumption that the jury verdict is impermissibly based upon Mr. Bell's lengthy incarceration is not necessarily correct. Although Mr. Bell mentioned the fact that he was incarcerated for 431 days, he also presented evidence that he was searched and arrested on the first day of his interaction with the Defendants without probable cause. In particular, Mr. Bell testified that he suffered intense humiliation when the Officers searched his groin. *See* Trial Tr. 73:2-16; 75:25-76:5; 80:4-5, May 28, 2014. Mr. Bell's restrained, albeit emotional, testimony regarding the humiliation he suffered during the false arrest and illegal search permits the Court to conclude that the jury award is neither clearly excessive nor erroneous.

With respect to the possibility of molding the verdict, "the rationalization for, and use of, the remittitur is well established as a device employed when the trial judge finds that a decision of the jury is clearly unsupported and/or excessive." *Spence v. Bd. of Ed. of Christina Sch. Dist.*, 806 F.2d 1198, 1201 (3d Cir. 1986). "Its use clearly falls within the discretion of the trial judge, [who] is in the best position to evaluate the evidence presented and determine whether or not the jury has come to a rationally based conclusion." *Id.* For the same reasons stated above, the Court finds that the jury's verdict is rational and supported by Mr. Bell's testimony about the humiliation he suffered during the illegal search and false arrest. Consequently, the Court will deny Defendants' request for a new trial or, in the alternative, remittitur.

C. <u>Plaintiff's Motion for a New Trial</u>

Mr. Bell moves for a new trial under Federal Rule of Civil Procedure 59(a) on his claims that Officers O'Connor and Goshert (a) illegally stopped him in violation of the Fourth Amendment (Count I), and (b) maliciously prosecuted him in violation of the Fourth Amendment (Count IV).

1. *Count I: Illegal Stop under the Fourth Amendment*

Mr. Bell argues that the jury's verdict on Count I, that Officers O'Connor and Goshert were not liable for illegally stopping Mr. Bell, is against the weight of the evidence. For Mr. Bell to prove that Officers O'Connor and Goshert stopped him illegally in violation of the Fourth Amendment, he must prove that they lacked a reasonable suspicion that he had violated a traffic ordinance. *See, e.g.*, *United States v. Delfin-Colina*, 464 F.3d 392, 396-97 (3d Cir. 2006). Mr. Bell claims that "there was absolutely no evidence presented at trial which could possibly permit a rational jury to find that Defendants O'Connor and Goshert reasonably believed that [he] violated any provision of Pennsylvania's Motor Vehicle Code at the time they pulled [his] vehicle over." (Pl.'s Mot. at 3-4). In particular, Mr. Bell claims that there was no evidence in the record that a Pennsylvania traffic ordinance requires drivers to display a valid registration sticker and that the Court never instructed the jury to that effect.

The Court disagrees for several reasons. First, because Mr. Bell did not raise this issue at trial or object to the jury instructions, the Court notes that Mr. Bell waived this particular argument. Second, Officer O'Connor testified at trial that Pennsylvania law requires drivers to display a valid registration sticker. *See* Trial Tr. 22:10-15, vol. 2, May 27, 2014. It is therefore incorrect to say that there was no evidence from which a reasonable jury could conclude that

14

failing to display a valid registration sticker was a traffic violation for which the Officers could properly stop Mr. Bell. Third, because this is a civil case, it was Mr. Bell's burden to prove that the Officers lacked a reasonable suspicion to stop him. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995). If Mr. Bell wanted to argue that the Officers lacked a reasonable suspicion because Pennsylvania law does *not* require drivers to display a valid registration sticker, it was his burden to make that showing and the jury could have found against him on Count I by concluding that he failed to meet his burden. Finally, the Court was not obligated to state explicitly in the jury instructions that Pennsylvania law required drivers to display a valid registration sticker because Mr. Bell failed to argue that the Officers lacked a reasonable suspicion on those grounds. Mr. Bell provides no citations to the record showing that he objected to the jury instructions or argued that Pennsylvania law does not require drivers to display a valid registration sticker.

The Court finds that there was sufficient evidence in the record to support the jury's verdict on Count I. Officer O'Connor testified that he and Officer Goshert stopped Mr. Bell because Mr. Bell did not have an appropriate validating sticker (or registration sticker) displayed on his vehicle's license plate. *See* Trial Tr. 20:22-24:3; 26:16-27:7, vol. 2, May 27, 2014. Although Officer O'Connor's initial report stated that he stopped Mr. Bell for unlawful plate display, *see, e.g.*, Trial Tr. 20:11-23, vol. 2, May 27, 2014, he maintained during his testimony that he mistakenly noted the wrong reason for the stop in his initial report, *see* Trial Tr. 22:21-23:3; 26:3-6, vol. 2, May 27, 2014. Officer O'Connor responded consistently to Mr. Bell's questions, and the jury could have believed his testimony regarding the true reason for the traffic stop. Because it is within the province of the jury to determine the credibility of witnesses like

Officer O'Connor and for all the reasons stated above, the Court will not disturb the jury's verdict with respect to Count I.

### 2. *Count IV: Malicious Prosecution under the Fourth Amendment*

Mr. Bell argues that the jury's verdict on his claim of malicious prosecution was unsupported by the evidence and inconsistent with the rest of the jury's findings. In order for the jury to find Officers O'Connor and Goshert liable for malicious prosecution under § 1983, Mr. Bell "must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003). In this dispute, only the third and fourth elements of the malicious prosecution claim are disputed. *See* Trial Tr. 69:10-11, May 29, 2014.

Mr. Bell claims that the jury verdict on the malicious prosecution claim is inconsistent with the verdict on his false arrest and illegal search claims. Mr. Bell assumes that the jury found the Officers liable on the false arrest and illegal search claims by concluding that Mr. Bell did not constructively possess the firearm. (*See* Pl.'s Mot. at 9). If the jury found that Mr. Bell did not even constructively possess the firearm, reasons Mr. Bell, then there could be no probable cause to initiate criminal proceedings against him. Consequently, Mr. Bell argues that the jury's verdict on the malicious prosecution claim is inconsistent with the jury's other findings and a new trial on Count IV is warranted.

16

While the Court can understand Mr. Bell's logic, that logic is not complete and the Court must disagree with Mr. Bell's conclusion. The fact that the jury found in Mr. Bell's favor on Counts II and III does not mean that it necessarily found he did not constructively possess the firearm. The jury instruction[5] did not require the jury to decide whether Mr. Bell had constructive possession of the weapon or that he knew that the weapon was in his vehicle. It simply asked the jury to decide whether the Officers had a reason to search the area surrounding Mr. Bell because of a reasonable concern for their safety. Thus, for example, the jury may have disbelieved the Officers' assertions regarding Mr. Bell's allegedly suspicious behavior, and found that the Officers had no reason to fear for their safety after pulling over Mr. Bell for a traffic violation. The fact that the jury determined that the search was improper in no way requires a conclusion that the jury also should have or must have found that he was unaware of

---

[5] The Court instructed the jury as follows:

> The protection of police and others can justify protective searches. The search of a passenger compartment of a car limited to those areas in which a weapon may be placed or hidden, is permissible if a police officer possesses a reasonable belief based on specific and articulable facts which taken together with the rational inferences from those facts reasonably warrant the officer's belief that the driver is dangerous and the driver may gain immediate control of a weapon. In this case, this is what's referred to as being for officer's safety. . . . But you must first determine whether Officer O'Connor and/or Officer Goshert searched the passenger compartment of Mr. Bell's car only and whether the search extended the trunk of the vehicle. If you determine they searched the trunk, then the search was not a protective search for officer safety and Officer O'Connor's and Officer Goshert's search violated the Fourth Amendment. However, if you find that Officer O'Connor and Officer Goshert only searched the passenger compartment of the car, you must determine based on the circumstances you find were known to Officers O'Connor and Goshert whether a reasonably prudent person in the shoes of the officers at the time they stopped the vehicle would be warranted in the belief that the officers' safety or the safety of others was in danger because of a weapon immediately accessible to Mr. Bell.

Trial Tr. 65:1-25, May 29, 2014.

17

the weapon in his vehicle. Additionally, as witness credibility is the province of the jury, the jury was entitled to disbelieve the assertions by Mr. Bell and Ms. Meta that Mr. Bell was unaware of the firearm. *See Onal v. BP Amoco Corp.*, 275 F. Supp. 2d 650, 657 (E.D. Pa. 2003). Because the jury could have concluded that Mr. Bell possessed the firearm (at least constructively for purposes of determining probable cause to prosecute him for a VUFA), it could have found that the Officers had probable cause to initiate the criminal proceedings.

In addition, the fact that the jury awarded punitive damages does not mean—as Mr. Bell argues—that the Officers acted maliciously in initiating criminal proceedings. The jury concluded that the Officers maliciously violated Mr. Bell's Fourth Amendment rights by illegally searching and arresting him, but the jury did not necessarily conclude that the Officers maliciously initiated criminal proceedings against him. A reasonable jury could have found that the Officers had probable cause to initiate criminal proceedings after they learned of all the facts supporting the VUFA charge, even though the Officers initially lacked probable cause to search and arrest Mr. Bell. The Court will therefore not disturb the jury's verdict on Count IV.

    D.    <u>Plaintiff's Motion for Sanctions</u>

In Mr. Bell's Motion for Sanctions under Federal Rule of Civil Procedure 11, Mr. Bell argues that defense counsel filed patently frivolous post-verdict motions. "Rule 11 requires that a court impose sanctions when a litigant or attorney makes submissions to the court which are frivolous and intended for improper purposes." *Kimmel v. Cavalry Portfolio Servs., LLC*, 747 F. Supp. 2d 427, 437 (E.D. Pa. 2010). The Court finds that defense counsel's post-verdict motions are not frivolous. Although the Court will deny most of the requests contained in Defendants' post-verdict motions, Defendants' arguments are sufficiently grounded in the case law and the

record that no sanctions will issue. Defendants' post-verdict filings caused Mr. Bell to incur additional expense in order to respond, but "the main purpose of Rule 11 is to deter, not to compensate." *DiPaolo v. Moran*, 407 F.3d 140, 145 (3d Cir. 2005). There is nothing in Defendants' post-verdict motions that is so egregious that is worthy of invoking such tools of deterrence.

### E. Plaintiff's Motion for Costs

A prevailing party under § 1983 is entitled to reasonable fees and costs. *See* 42 U.S.C. § 1988; 28 U.S.C. § 1920; Fed. R. Civ. P. 54(d)(1). Because Mr. Bell argued this case pro se, his Motion for Costs seeks to recover only his filing fee ($450.00) and the cost of serving subpoenas on two witnesses ($80.00). (Pl.'s Mot. for Costs at ¶¶ 2-3). In general, "costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). In this case, Mr. Bell is the prevailing party for purposes of taxing costs. *See Institutionalized Juveniles v. Sec'y of Pub. Welfare*, 758 F.2d 297, 910 (3d Cir. 1985) (finding that a plaintiff prevailed if she "achieved some of the benefit sought" in bringing the suit). Therefore, the Court will permit Mr. Bell to recover the $530.00 in costs he incurred in bringing this lawsuit.

## IV. Conclusion

There was sufficient evidence in the record to support the jury's verdict with respect to every claim except the municipal liability claim in Count V. As a result, the Court will deny Plaintiff's Motion for a New Trial and, except as to Count V, the Court will deny Defendants' Motion for Judgment as a Matter of Law, or in the Alternative, for a New Trial or to Alter or Amend the Judgment. The Court will grant judgment for the City on Count V, deny Plaintiff's Motion for Sanctions, and grant Plaintiff's Motion for Costs. The Court will leave undisturbed

the jury award of $100,000.00 in compensatory damages and $1,000.00 in punitive damages, and the Court will award Mr. Bell costs in the amount of $530.00.

BY THE COURT:

**/s/ Gene E.K. Pratter**
_____
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE